■ In the Matter of QUEEN TARRANT, Petitioner, v JASON A. TURNER et al., Respondents. [704 NYS2d 595] —Petition, in a proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Bernard Fried, J.], entered on or about May 20, 1999), challenging a determination, after fair hearing, of respondent State of New York Office of Temporary and Disability Assistance, dated September 28, 1998, which affirmed the earlier determination by respondent New York City Department of Social Services (DSS) that petitioner was not entitled to foster care payments at the special rate for her care of three foster children, Roxanne L., Joseph L., and Melshawn L., from January 18, 1996 through February 18, 1997, unanimously granted, without costs, the determination annulled, and the matter remitted to the New York City Department of Social Services to reimburse petitioner for the disputed period at the special rate, excluding the period from February 15, 1996 through March 18, 1996.

The children were placed in foster care with petitioner on January 18, 1996. At the fair hearing, petitioner testified that the children were in "bad shape" when they first arrived, Roxanne's hair was matted, Melshawn's arm was broken, and they would tear up books and bed sheets and run from bed to bed. Petitioner averred that the children remained completely "out of control" and "would just run through the house and tear up

everything they came in contact with." As a result, petitioner requested that the children be removed and on February 15, 1996, they were placed with an aunt. Petitioner was subsequently asked if she would take the children back, and she agreed to do so subject to the condition that they be evaluated.

The children were returned to petitioner on March 18, 1996, and they each underwent psychological evaluations over the next several months. From the time the children were initially placed in her home, petitioner received foster care payments for them at the regular rate despite repeated requests for benefits at the higher "special needs" rate because of their pronounced emotional problems and the high degree of care that they required.

The New York City Department of Social Services finally agreed to provide foster care payments at the special rate for the post-February 18, 1997 period, apparently on the basis of psychiatric certificates issued for each child on that date which recommended constant supervision in a structured environment. Petitioner thereafter requested a fair hearing in an effort to obtain retroactive foster care benefits at the special rate beginning on January 18, 1996, when the children were initially placed in her home. After the fair hearing was conducted, the State of New York Office of Temporary and Disability Assistance issued a decision dated September 28, 1998 which, *inter alia*, determined that pre-February 18, 1997 foster care payments at the special rate were not warranted. We disagree and annul that determination.

The record herein reflects that in February 1997, Melshawn was diagnosed with adjustment disorder with behavior disturbance, without ruling out dysthymic disorder and learning disability. In November 1996, a psychiatric evaluation indicated that Melshawn suffered from attention deficit hyperactivity disorder and recommended his enrollment in available special education and social skills training programs. A letter from Melshawn's teacher stated that he refused to join in class activities, cries uncontrollably when reprimanded and "does whatever he pleases."

In February 1997, Joseph was diagnosed as suffering from adjustment disorder with disturbance of conduct and exhibited "poor impulse control, poor judgment, defiance of authority and [fails] to follow directions." In October 1996, Joseph received an almost identical diagnosis after a psychological evaluation, and his teacher documented incidents in May 1996 of fighting, being disrespectful to his teacher and refusing to follow instructions.

Roxanne was diagnosed in February 1997 with adjustment disorder with depressed mood, attention deficit hyperactivity disorder and dysthymic disorder with a possible learning disability. In May 1996, Roxanne underwent a psychological evaluation which revealed poor impulse control and low frustration tolerance and a follow-up examination, which indicated that Roxanne exhibited anxiety, hyperactive behavior and adjustment disorder with a depressed mood and oppositional/defiant behavior.

In light of the foregoing, it is clear that all three children suffer chronic disorders, and the record reflects that these conditions were well-documented prior to the February 1997 evaluations which led to the award of special needs payments by the DSS. Further, there is nothing in the record to explain why special care was not required prior to February 1997 and, as a result, we find the denial of special benefits during the disputed period to be without a rational basis (*see, Matter of Adania C. v Hammons*, 236 AD2d 315). Concur—Nardelli, J. P., Mazzarelli, Lerner and Andrias, JJ.